JOHN D. TRAN, ESQ. (State Bar No. 231761)
ROSALIND T. ONG, ESQ. (State Bar No. 234326)
**RHEMA LAW GROUP P.C.**
1 PARK PLAZA SUITE 600
IRVINE, CA 92614
EMAIL:     JDT@RHEMALAW.COM
EMAIL:     RTO@RHEMALAW.COm
TELEPHONE: (949) 852-4430
FAX:            (866) 929-3519

Attorneys for Defendants and Counterclaimants
PIPELINE RESTORATION PLUMBING, INC. et. al.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIPE RESTORATION TECHNOLOGIES, LLC, a Nevada Limited Liability Company, ACE DURAFLO SYSTEMS, LLC, a Nevada Limited Liability Company; and PIPE RESTORATION, INC., a California Corporation, | Case No. SACV 13–00499 CJC (RNBx) |
| | COUNTERCLAIMANTS' OPPOSITION TO COUNTERDEFENDANTS' MOTION TO DISMISS COUNTERCLAIM COUNTS IV AND V PURSUANT TO F.R.C.P. RULES 12(b)(6) AND 9(b) |
| Plaintiffs, | |
| | ASSIGNED TO: Honorable Cormac J. Carney |
| v. | |
| PIPELINE RESTORATION PLUMBING, INC., a California Corporation f/k/a/ COAST BUILDING & PLUMBING, INC. d/b/a PIPELINE RESTORATION, PIPELINE RESTORATION SERVICES, and PIPELINE RESTORATION SERVICES, INC.; ROY TERRY, an individual; and DOES1 through 10, inclusive, | DATE:  June 2, 2014 TIME: 1:30 p.m. COURTROOM:  9B |
| Defendants. | |

# **TABLE OF CONTENTS**

INTRODUCTION.................................................................................................... 1

LEGAL STANDARD ............................................................................................. 2

ARGUMENT ......................................................................................................... 2

I.   Count IV of the FAAC Sets Forth a Valid Claim for Federal Unfair
Competition ............................................................................................................ 2

   A. The FAAC Alleges That Counterdefendants Made False And Misleading
Statements ............................................................................................................ 2

   B. The FAAC Properly Pleads All Elements of Federal Unfair Competition..... 5

      1. The FAAC sets forth facts to support each element of Counterclaim IV ..... 5

      2. The allegations in the FAAC satisfy the heightened pleading standard ....... 6

II.   COUNT V OF THE FAAC SETS FORTH A VALID CLAIM UNDER
CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 et. seq. AND
§ 17500 .................................................................................................................. 7

   A.  The FAAC Properly States a Claim For False Advertising Under California
Business and Professions Code
§17500……………………………………………………...…8

   B. The FAAC Properly States a Claim For False Advertising Under California
Business and Professions Code §§ 17200 et. seq. ……………………………..…9

   C. The FAAC Properly Alleges Harm and Otherwise Satisfies the Pleading
Requirements for the State Law Claims……………...…………………..10

CONCLUSION……………………………………………………………...12

COUNTERCLAIMANTS' OPPOSITION TO
COUNTERDEFENDANTS' MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Cases**

*Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005)................. 11

*Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254 (Cal. 1992) ....................................... 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 2

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) ...................................................... 2

*Cel–Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (Cal. App. 1999).................................................................................................................. 9

*Comm. on Children's Television v. General Foods Corp.*, 35 Cal.3d 197 (Cal. 1983) ...................................................................................................................... 7

*Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242 (9th Cir. 1990) ........................................................................................................ 5

*Decker v. GlenFed, Inc.*, 42 F.3d 1541 (9th Cir. 1994).......................................... 6

*Doe v. United States Dept. of Justice*, 753 F.2d 1092 (D.C. Cir. 1985)................ 12

*Gallardo v. DiCarlo*, 203 F.Supp.2d 1160 (C.D. Cal. 2002) .................................. 2

*Gay–Straight Alliance Network v. Visalia Unified School Dist.*, 262 F. Supp. 2d 1088 (E.D. Cal. 2001)............................................................................................ 2

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)...................................................... 8

*In re WellPoint, Inc. Out-Of Network "UCR" Rates Litig.*, 903 F.Supp.2d 880 (C.D. Cal. 2012) .................................................................................................... 11

*Kasky v. Nike, Inc.*, 27 Cal.4th 939 (Cal. 2002)…………………………………8, 9

*Law Offices of Mathew Higbee v. Expungement Assistance Services*, 214 Cal. App. 4th 544 (Cal. App. 2013)…………………………………………………10, 11

*Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (Cal. App. 2007) .............................................................................................................. 7

*McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004) .................................. 2

*McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (Cal. App. 2006) ...... 7

*Morgan v.–4T & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235 (Cal. App. 2009)……………………………………………………………………..9

*Mutual Pharm. Co. v. Ivax Pharm., Inc.* 459 F. Supp. 2d 925 (C.D. Cal. 2006) …………………………………………………… ……………3, 4, 5

*O'Loghlin v. County of Orange*, 229 F.3d 871 (9th Cir. 2000)............................. 2

*Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608 (Cal. App. 1996)............................ 9

*Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659 (Cal. App. 2006) ............. 9

*People v. Lynam*, 253 Cal. App. 2d 959 (Cal. App. 1967) ...................................... 8

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1985)............................................. 6

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir.1997) ........... 3, 6

*Summit Technology, Inc. v. High-Line Medical Instruments, Co.*, 933 F.Supp. 918 (C.D. Cal. 1996) .................................................................. 12

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011)................... 6

*VP Racing Fuels, Inc. v. Gen. Petroleum Corp.* 673 F.Supp.2d 1073 (E.D. Cal. 2009)................................................................................. 4, 10

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008)....................... 7, 8

**Other Authorities**

Schwarzer, et al., Civil Procedure Before Trial § 9:230........................................ 12

COUNTERCLAIMANTS' OPPOSITION TO
COUNTERDEFENDANTS' MOTION TO DISMISS

# INTRODUCTION

Defendants and Counterclaimants Pipeline Restoration Plumbing, Inc. f/k/a/ Coast Building & Plumbing, Inc. d/b/a Pipeline Restoration Services and Pipeline Restoration Services, Inc. and Roy Terry (collectively "Counterclaimants"), hereby oppose the motion to dismiss ("Motion") filed by Plaintiffs and Counterdefendants Pipe Restoration Technologies, LLC, a Ace Duraflo Systems, LLC, and Pipe Restoration, Inc. (collectively "Counterdefendants").

Counterdefendants' Motion largely rests on an implausible and inaccurate interpretation of Counterclaimants' First Amended Answer and Counterclaims ("FAAC").  Counterdefendants argue that the FAAC does not allege a false statement because Counterdefendants do possess a NSF/ANSI 61 certification. Therefore, Counterdefendants argue, advertising and promoting their products in connection with that certification is not false or misleading.  That argument overlooks the central allegation in counterclaims IV and V, which is that Counterdefendants' products in the marketplace are not in fact compliant with their certification.  As a result, Counterdefendants are making false statements when they advertise and promote their products in connection with their certification. Furthermore, they are misleading consumers into believing that their products are NSF/ANSI compliant when they are not.  Those false statements have resulted in competitive harm to Counterclaimants, and products that do not comply with the NSF/ANSI standard can be dangerous and can result in significant health and safety risks to the public.

As described below Counterclaimants have alleged facts sufficient to support Counts IV and V of the FAAC, and should be allowed to proceed to discovery on their claims without further delay.

/ / /

/ / /

## LEGAL STANDARD

Motions alleging that a party has failed to state a claim, such as the instant motion, "are disfavored and rarely granted." *Gay–Straight Alliance Network v. Visalia Unified School Dist.*, 262 F. Supp. 2d 1088, 1098 (E.D. Cal. 2001); *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004); *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (A Rule 12(b)(6) motion is "viewed with disfavor.").

When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 583 (2007) (quotations omitted). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Id.* "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Id.*

The moving party bears the burden of demonstrating that the non-moving party is not entitled to offer evidence to support the claims. *See Gallardo v. DiCarlo*, 203 F.Supp.2d 1160, 1165 (C.D. Cal. 2002). Therefore, all factual allegations in a complaint should be construed in the light most favorable to the *non-moving party* for purposes of ruling on a motion to dismiss. *O'Loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000)(emphasis added).

## ARGUMENT

### I.   Count IV of the FAAC Sets Forth a Valid Claim for Federal Unfair Competition

#### A.   The FAAC Alleges That Counterdefendants Made False And Misleading Statements

Claim IV seeks relief for Counterdefendants' violations of violations of 15 U.S.C. § 1125 of the Lanham Act. The central focus of that statute is to combat

false representations in promoting a product in the marketplace. *Mutual Pharm. Co. v. Ivax Pharm., Inc.* 459 F. Supp. 2d 925, 932 (C.D. Cal. 2006) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139–40 (9th Cir.1997).

The FAAC alleges that Counterdefendants have made and continue to make false statements about the nature of their products. FAAC ¶¶ 9-15. Counterdefendants wrongly argue that Claim IV is based entirely "on Counterdefendants' true statement that their epoxy is NSF certified." Motion at 2. To the contrary, the basis of Claim IV is that Counterdefendants' products in the marketplace are not compliant with their certification. FAAC ¶¶ 10-13. As a result, representations that their products *are* compliant with the NSF/ANSI 61 standard are false and misleading. FAAC ¶¶ 9, 14.

There is no dispute as to the fact that Counterdefendants' products are certified as under the NSF/ANSI 61 standard. FAAC ¶ 11. Counterdefendants do not deny that they use the fact of that certification to promote their products and services. *See* Motion at 3, ll. 24-27. Counterclaimants' discovered, however, that the thickness of epoxy that Counterdefendants use in their products violates their certification. The FAAC explains that Counterdefendants "are using an epoxy that exceeds the allowable material application thickness required by its NSF 61 listing." FAAC ¶ 11. Furthermore, Counterdefendants' "epoxy thickness is well beyond the 10 mils thickness and thus Counterclaim Counterclaimants usage and application of its epoxy is in violation of their NSF/ANSI 61 standard listing." FAAC ¶ 12. The FAAC explains that this violation of the certification is not an isolated incident, but occurred "on publicly distributed samples, factory lined piping and product samples removed from completed building systems." FAAC ¶ 13. None of the samples that Counterclaimants obtained and tested were compliant with the standard. FAAC ¶ 13. As a result of those ongoing violations, Counterdefendants are misleading and confusing consumers, and gaining an improper competitive advantage over Counterclaimants. FAAC ¶¶ 11, 14.

Under § 43(a) of the Lanham Act, the falsity of a statement can be established either by showing that the statement "was literally false, either on its face or by necessary implication," or by showing that although the statement was "literally true" it was nonetheless "likely to mislead or confuse consumers." *Mutual Pharm. Co.,* 459 F.Supp.2d at 932.

In *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.* 673 F.Supp.2d 1073, 1084 (E.D. Cal. 2009), the court stated that a party who promotes their products as complying with an industry standard, when the products are not in fact compliant with that standard, makes statements that are literally false. In that case, the defendant advertised that its fuel was certified as having a particular octane level. The plaintiff tested samples of the fuel and found it to be non-compliant with the standard. *Id.* at 1077. Although in that case the Lanham Act claim was preempted by Title II of the Petroleum Marketing Practices Act, the court noted that the defendant would have been liable for false advertising under the Lanham Act. Specifically, the court stated that the defendant "would necessarily be in violation of Section 43(a) for any advertisements it makes in accordance with such certification because the statements would be literally false." The situation is no different in the present case. As set forth in the FAAC, Counterdefendants have made false statements by promoting non-ANSI/NSF compliant products as being ANSI/NSF compliant.

Moreover, although Counterdefendants' advertisements and representations are literally false, statements do not have to be literally false in order to constitute a violation of the Lanham Act. Instead, they need only be misleading. *Mutual Pharm. Co*., 459 F.Supp.2d at 932-33 (finding that Lanham Act § 43(a) "embraces innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlying an advertisement.") (internal quotation omitted).

The FAAC alleges that Counterdefendants have wrongly made false

COUNTERCLAIMANTS' OPPOSITION TO
COUNTERDEFENDANTS' MOTION TO DISMISS

representations in promoting a product in the marketplace, that consumers are likely to be deceived by those misrepresentations, and that Counterdefendants are using those misrepresentations to gain an unfair advantage over Counterclaimants in the marketplace.  Under either a literal falsehood or a misleading statement test, the FAAC sets forth facts that properly support a claim for false advertising.  Accordingly, there is no merit to Counterclaimants' argument that Counterdefendants failed to identify a false statement.

**B.  The FAAC Properly Pleads All Elements of Federal Unfair Competition**

**1.  The FAAC sets forth facts to support each element of Counterclaim IV**

In order to prevail on a claim under § 43(a) of the Lanham Act, a plaintiff must ultimately prove:  (1) that the defendant made a false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Cook, Perkiss and Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242, 244 (9th Cir. 1990).  The FAAC sufficiently sets forth facts that support each of the five prongs, such that discovery on this claim should be allowed to proceed.  First, as discussed above, the FAAC identifies false statements Counterdefendants made about their products in commercial advertising.  FAAC ¶¶ 11-13.  Second, the FAAC alleges that those statements deceive the public into believing that products are compliant with the NSF/ANSI 61 standard when they are not.  FAAC ¶ 11.  Third, and importantly, violations of the ANSI/NSI standard create health and safety risks for

the public.  FAAC ¶ 15.  Due to the serious consequences of non-compliance with the standard, Counterdefendants' NSI/ANSI certification is likely a material aspect in any consumer's purchasing decision.

Fourth, as to the interstate commerce requirement, it is the statement or advertisement itself, rather than the falsely advertised goods or services, which must be used in interstate commerce.  *Southland Sod Farms*, 108 F.3d at 1139, n. 3.  When a party advertises their services on a website, it is "virtually automatic" that the interstate commerce requirement is met.  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 829 n. 3 (9th Cir. 2011).  In the present case, Counterdefendants' website plainly advertises, "All materials used are approved for potable water contact, completely non-toxic and certified to NSF/ANSI Standard 61."  http://www.pipelinerestoration.com/, last accessed May 8, 2014[1].

Fifth and finally, Counterclaimants have alleged that Counterdefendants' false and misleading statements are being used to obtain a competitive advantage, and that Counterclaimants are therefore harmed.  FAAC ¶ 14.  Claim IV is therefore properly pled.

## 2.   The allegations in the FAAC satisfy the heightened pleading standard

In order to plead claims that sound in fraud, a moving party must "set forth what is false or misleading about a statement, and why it is false."  *Decker v. GlenFed, Inc*., 42 F.3d 1541, 1548 (9th Cir. 1994).  A claim for fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Semegen v. Weidner*, 780

---

[1] To the extent the Court finds it necessary for Counterclaimants to identify this website and statements from the website its pleading, Counterclaimants request leave to amend the FAAC for that purpose.

COUNTERCLAIMANTS' OPPOSITION TO
COUNTERDEFENDANTS' MOTION TO DISMISS

F.2d 727, 731 (9th Cir.1985).

Here, Counterclaimants have done more than simply put Counterdefendants in a position of having to deny general wrongdoing.  The FAAC identifies the source of the false and misleading statements (Counterdefendants), the nature of the false and misleading statements (false statements regarding products that are not NSF/ANSI compliant), and the location where the statements were made (in marketing materials, in-person solicitations among other materials). Counterclaimants further provided evidence of Counterdefendants' certification, and photographic evidence of Counterclaimants' non-compliance with that certification.  In light of those allegations, there can be no doubt that Counterdefendants are aware of the charge against them, and are not simply in a position of having to deny that they did anything wrong.  This is particularly true given that Counterdefendants do not deny promoting their products as being NSF/ANSI compliant, and the landing page of their publicly available website provides one clear example of Counterdefendants' false statements.

## II.   COUNT V OF THE FAAC SETS FORTH A VALID CLAIM UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17200 et. seq. AND § 17500

As an initial matter, California courts have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer.  *Williams v. Gerber Products Co.*, 552 F.3d 934, 938-939 (9th Cir. 2008) (citing *Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (Cal. App. 2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer." (quoting *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1472 (Cal. App. 2006))); *Comm. on Children's Television v. General Foods Corp.*,

35 Cal.3d 197 (Cal. 1983) (finding demurrer inappropriate in case where parents alleged deceptive advertising of sugar cereals).

In *Williams*, the court recognized that in order for a claim relating to a deceptive business practice to be dismissed at the pleading stage, the facts must amount to a "rare situation." *Williams,* 552 F.3d at 939.  The present case does not constitute a rare situation that would warrant dismissal.  The facts set forth in the FAAC support claims for false advertising under California law, as well as for unlawful, fraudulent, and unfair business practices under California's Unfair Competition Law ("UCL").

## A. The FAAC Properly States a Claim For False Advertising Under California Business and Professions Code § 17500

"[T]o state a claim under either the UCL or the false advertising law [("FAL")], based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (Cal. 2002)). Accordingly, a plaintiff must allege: (1) statements in the advertising are untrue or misleading, and (2) defendant knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading.[2]  *People v. Lynam*, 253 Cal. App. 2d 959, 965 (Cal. App. 1967).

Here, the FAAC alleges that Counterdefendants made false statements regarding their compliance with the NSF/ANSI standard.  FAAC ¶¶ 11-13. Counterdefendants are aware of their certification, and of their own business practices that violate that certification.  They therefore should have known of their own false statements.  No further allegations are required at the pleading stage.

*/ / /*

---

[2] Counterclaimants incorporate by reference the discussion above regarding satisfying the heightened pleading standard into this and the following sections.

**B. The FAAC Properly States a Claim For False Advertising Under California Business and Professions Code §§ 17200 et. seq.**

The allegations discussed above constitute violations of the unlawful, unfair and fraudulent prongs of California's UCL.  First, an "unlawful" business practices means "anything that can properly be called a business practice and that at the same time is forbidden by law."  *Bank of the West v. Sup. Ct.*, 2 Cal. 4th 1254, 1266–67 (Cal. 1992); *see also Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 681 (Cal. App. 2006) ("[V]irtually any law or regulation—federal or state, statutory or common law—can serve as a predicate for a [section] 17200 'unlawful' violation.") (internal citations and quotations omitted). California courts have recognized that " '[a]ny violation of the false advertising law ... necessarily violates' the UCL." *Kasky*, 27 Cal. 4th at 950 (internal quotations removed). Accordingly, the above-discussed violations of the Lanham Act, as well as the California Business and Professions Code section 17500, serve as a predicate for liability under the "unlawful" prong of the UCL.

Second, the "fraud" prong of the UCL encompasses business practices that tend to mislead or deceive members of the public. *Morgan v.–4T & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254–56 (Cal. App. 2009); *Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608 (Cal. App. 1996).  Here, Counterclaimants have alleged that consumers are likely to be deceived into believing that Counterdefendants' products comply with the ANSI/NSI 61 standard, when in fact, they do not, and Counterclaimants as well as the general public have been harmed as a result. FAAC ¶¶ 9-15.

Third, a business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to a violation of the law, or that otherwise significantly threatens or harms competition." *Cel–Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (Cal. App. 1999).

COUNTERCLAIMANTS' OPPOSITION TO
COUNTERDEFENDANTS' MOTION TO DISMISS

In *VP Racing*, the court found that facts analogous to those in the present case supported a claim for unfair business practice under the UCL. In that case, the plaintiff alleged that the defendants' practice of labeling its product as 100-octane fuel when it was not 100-octane unfairly diverted sales to the defendant. The court concluded, "Plaintiff has sufficiently alleged harm such that Defendant should be made to answer." *VP Racing*, 673 F.Supp.2d at 1087. In the present case as well, Counterdefendants have unfairly competed with Counterclaimants, and should be made to answer.

### C. The FAAC Properly Alleges Harm and Otherwise Satisfies the Pleading Requirements for the State Law Claims

Counterclaimants have sufficiently alleged harm to support their FAL and UCL claims, regardless of which prong of the UCL is at issue. Counterdefendants are incorrect in alleging that Counterdefendants have only alleged incidental and general damages, lost profits, and out-of-pocket expenses. Motion at 8. To the contrary, the FAAC explains that Counterdefendants have suffered competitive harm as a result of Counterclaimants' wrongful business practices. FAAC ¶¶ 9, 14. Competitive harm in the form of lost market share supports claims under the UCL and FAL. *Law Offices of Mathew Higbee v. Expungement Assistance Services*, 214 Cal. App. 4th 544 (Cal. App. 2013). "[T]he original purpose of the unfair competition laws was to protect against wrongful conduct in commercial enterprises which resulted in business loss to another, ordinarily by the use of unfair means in drawing away customers from a competitor." *Id*. at 561 (internal quotation omitted.) Although the UCL was ultimately expanded to provide relief to consumers, "this does not mean that the UCL no longer protects business competitors." *Id*.

Counterdefendants are likewise incorrect in alleging that Counterclaimants need to allege actual reliance in addition to alleging harm. *See* Motion at 8. In

*Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1137-1138 (C.D. Cal. 2005), the court clarified that Proposition 64 did not impose a reliance requirement on UCL or FAL claims.  The court found that imposing such a requirement could undermine the purpose of the statute, and that "none of the ballot materials which accompanied Proposition 64–the California Attorney General's summary, the commentary prepared by the California Legislative Analyst's Office, or the arguments for and against the Proposition-mention reliance." *Id.* at 1138.  *In re WellPoint, Inc. Out-Of Network "UCR" Rates Litig.*, 903 F.Supp.2d 880, 925 (C.D. Cal. 2012), the case on which Counterdefendants rely, the plaintiffs alleged that the defendant defrauded them by inducing them to make certain purchases, and to make them at a higher price than warranted. *Id.* at 925.  Accordingly, in order to show harm, the plaintiffs were required to show that it was defendants' fraudulent statement that caused them to act, and therefore caused them harm.

Here, the allegation is that Counterdefendants' behavior has harmed Counterclaimants' position in the marketplace, by inducing consumers to believe that their products are NSI compliant.  Under those facts, requiring an independent showing that Counterclaimants themselves took action based on Counterdefendants' behavior is not necessary in order to show harm, and would undermine the purpose of the statute. *See Anunziato*, 402 F. Supp. 2d at 1138; *see also Law Offices of Mathew Higbee*, 214 Cal. App. 4th at 563-564 (finding that a UCL claim can be brought by a party who has not themselves done business with the defendant, but who has suffered competitive harm as a result of the defendant's behavior).

Finally, Counterdefendants argue that Counterclaimants are requesting relief that is not recognized under the FAL or the UCL.  Motion at 8.  As an initial matter, that statement is incorrect.  Counterclaimants have alleged harm, and are seeking equitable relief, costs and fees, and any and all additional relief that the Court deems proper.  FAAC ¶¶ 25, 28; Prayer for Relief.  Importantly, however, a

COUNTERCLAIMANTS' OPPOSITION TO
COUNTERDEFENDANTS' MOTION TO DISMISS

Rule 12(b)(6) motion "will not be granted merely because [a] plaintiff requests a remedy to which he or she is not entitled." *Summit Technology, Inc. v. High-Line Medical Instruments, Co*., 933 F.Supp. 918, 927-928 (C.D. Cal. 1996) (citing Schwarzer, et al., Civil Procedure Before Trial § 9:230; *Doe v. United States Dept. of Justice*, 753 F.2d 1092, 1104 (D.C. Cir. 1985) ("It need not appear that plaintiff can obtain the specific relief demanded as long as the court can ascertain from the face of the complaint that some relief can be granted.")).

In sum, Counterdefendants have presented the Court with no reason to take the disfavored step of dismissing Counterclaims IV and V at this early stage in the proceedings.  To the extent the Court finds it necessary for Counterclaimants to include more details in their pleadings, Counterclaimants request leave to amend their Counterclaims in order to provide that detail.

### Conclusion

Counterdefendants' Motion is based on an illogical interpretation of the facts and law.  Counterclaimants have properly pled Counterclaims IV and V, and have set forth facts sufficient to support each Counterclaim.  Counterclaimants therefore respectfully request that Counterdefendants' Motion be denied, and Counterclaimants be allowed to take discovery on their claims.

Dated: May 12, 2014                    **RHEMA LAW GROUP, P.C**

Rosalind T. Ong
John D. Tran
Attorneys for Counterclaimants Pipeline
Restoration Plumbing, Inc., Plumbing, Inc.
and Roy Terry

COUNTERCLAIMANTS' OPPOSITION TO
COUNTERDEFENDANTS' MOTION TO DISMISS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2014, I caused the foregoing document entitled to COUNTERCLAIMANTS' OPPOSITION TO COUNTERDEFENDANTS' MOTION TO DISMISS COUNTERCLAIM COUNTS IV AND V PURSUANT TO F.R.C.P. RULES 12(b)(6) AND 9(b) to be filed with the clerk of court for the U.S. District Court, Central District of California using the Court's Electronic Case Filing (ECF) System.


Executed on May 12, 2014, at Irvine, California.


John D. Tran

COUNTERCLAIMANTS' OPPOSITION TO
COUNTERDEFENDANTS' MOTION TO DISMISS